Howard Shanker, Attorney General (AZ Bar No. 015547)
Howard.Shanker@tonation-nsn.gov
Rebecca Cohen (AZ Bar No. 039139)
Rebecca.Cohen@tonation-nsn.gov
P.O. Box 830
Sells, Arizona 85634
(520) 383-3410

*Attorneys for the Tohono O'odham Nation*

Alexander B. Ritchie, Attorney General (AZ Bar No. 019579)
alex.ritchie@scat-nsn.gov
Justine Jimmie (AZ Bar No. 019148)
justine.jimmie@scat-nsn.gov
Jana Sutton (AZ Bar No. 032040)
jana.sutton@scat-nsn.gov
Bernardo M. Velasco (AZ Bar No. 033746)
bern.velasco@scat-nsn.gov
P.O. Box 40
San Carlos, Arizona. 85550
(928) 475-3344

*Attorneys for the San Carlos Apache Tribe*

William S. Eubanks II (DC Bar No. 987036)
bill@eubankslegal.com
Elizabeth L. Lewis (DC Bar No. 229702)
lizzie@eubankslegal.com
EUBANKS & ASSOCIATES, PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(970) 703-6060

*Attorneys for Plaintiffs Center for Biological
Diversity and Archaeology Southwest*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**
**TUCSON DIVISION**

| Tohono O'odham Nation, *et al.*, | No. 4:24-cv-00034-JGZ |
|---|---|
| Plaintiffs, | **OPPOSITION TO FEDERAL** |

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

v.

United States Department of the Interior, *et al.*,

            Defendants,

    and

SunZia Transmission, LLC,

      Intervenor-Defendant.

**DEFENDANTS' SECOND MOTION FOR A STAY OF THE CASE IN LIGHT OF LAPSE OF APPROPRIATIONS**

On Wednesday, November 5, 2025, counsel for Defendants emailed counsel for Plaintiffs to request Plaintiffs' position on Defendants' planned motion to stay the case given the ongoing federal government shutdown. On Thursday, November 6, counsel for Plaintiffs responded to counsel for Defendants that she was "checking with [her] clients" regarding the motion and would "get back to [Defendants' counsel" ASAP [as soon as possible]." On the morning of Friday, November 7, 2025, Defendants filed their second motion for a stay, ECF No. 39, without Plaintiffs' position. For the reasons articulated below, Plaintiffs oppose the motion.

Thirty-seven days have passed since this Court granted Defendants' initial Motion to Stay, ECF No. 87. During that time, construction activities on the SunZia Transmission Line have continued in the San Pedro Vally, causing Plaintiffs ongoing irreversible harm. For instance, in May 2025, Intervenor-Defendant completed a partial assignment of the right-of-way for the transmission line to Rio/Sol for the purposes of building and stringing a second transmission line through the San Pedro Valley, which will deepen the harm to this significant traditional cultural landscape. *See* Ex. 1. Rio/Sol is presently engaged in meetings with various government officials to obtain the necessary approvals to proceed with construction. *See* Ex 2. Once Rio/Sol obtains these approvals, construction on the second transmission line will proceed, further entrenching the harms to the historic properties and cultural resources in the San Pedro Valley that are of immeasurable significance to Plaintiffs.

This Court should deny Defendants' Motion to Continue the Stay, ECF No. 39,

2

because: (1) Defendants have not met their burden to demonstrate why a further stay of this case is necessary or appropriate, particularly since this Court and other courts have directed DOJ staff to continue to work during the Congressional appropriations lapse; (2) Plaintiffs have been, and will continue to be, harmed by a stay while Defendants continue to engage in the underlying harmful activities at issue in this litigation; and (3) resolving this case without further undue delay would best serve judicial economy. *See DeMartini v. Johns*, 693 Fed. App'x 534, 538 (9th Cir. 2017) (noting that the party moving for a stay has the burden to "make out a clear case of hardship or inequity in being required to go forward," and the court must weigh the competing interests at stake in granting or denying the stay) (citation and internal quotation marks omitted).

Defendants have not met their burden of showing that a further stay in this case is warranted or necessary given the lapse in Congressional appropriations for two reasons. First, Defendants' motion fails to mention any of the three "non-exclusive factors" that the Court must weigh when considering whether to stay proceedings in a case. The Ninth Circuit has identified the three factors for courts to weigh when deciding whether to grant a stay: "(1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law." *Chinaryan v. City of Los Angeles*, 122 F.4th 823, 825 (9th Cir. 2024) (citation and internal quotation marks omitted). Here, Defendants argued only that "good cause" exists to grant the stay. *See* ECF No. 89 ¶ 6. However, "good cause" is not among the three factors that would justify a stay. *See Chinaryan*, 122 F.4th at 825. Because Defendants failed to even mention the three factors—much less make any showing as to whether they weigh in Defendants' favor—Defendants have failed to carry their burden of demonstrating that a stay is appropriate, much less necessary.

Second, to the extent "good cause" is relevant to the Court's inquiry, Defendants have not even demonstrated that "good cause" exists to grant the motion for a stay.

1   Defendants insist that a stay is necessary because "much of the federal government . . . has

2   not operated due to the lapse in appropriations," and as such, "Defendants have not been

3   able to work on this case." ECF No. 39 ¶ 6. This argument appears to rely solely on the

4   broad language of the Antideficiency Act, 31 U.S.C. § 1342, which does not require the

5   Court to stay this case. Indeed, several courts—including this Court—have denied motions

6   for a stay in light of the lapse in appropriations, finding that the Antideficiency Act and

7   DOJ's own FY 2026 Contingency Plan authorize DOJ attorneys to work to comply with

8   existing scheduling deadlines. *See, e.g.*, Order Den. Mot. for Stay, *Ctr. for Biological

9   Diversity et al. v. U.S. Forest Serv.*, ECF No. 30, at 1-2, No. 4:24-cv-00405-RM (D. Ariz.

10  Oct. 20, 2025) (citing *Lehman v. U.S. Dep't of Lab.*, No. 25-11846, 2025 WL 2808472, at

11  *1 (E.D. Mich. Oct. 2, 2025); *In re Camp Lejeune Water Litig.*, No. 7:23-CV-897, 2025 WL

12  2827029, at *2 (E.D.N.C. Oct. 6, 2025); *PETA v. U.S. Dep't of Agric.*, 912 F.3d 641, 641

13  (D.C. Cir. 2019) (Katsas, J., concurring)); Order Den. Mot. for Stay, *Center for Biological

14  Diversity et al. v. U.S. Bureau of Land Mgmt. et al.*, ECF No. 39, at 1-2, No. 4:24-cv-00141-

15  RM (D. Ariz. Oct. 16, 2025) (same); Order, *Ctr. for Biological Diversity v. Noem*, ECF No.

16  29, No. 25-cv-365-TUC-AMM (JEM) (D. Ariz. Nov. 5, 2011) (same).

17          Additionally, Defendants would not be substantially prejudiced if this litigation were

18  to move forward. The Ninth Circuit issued its decision remanding the case to this Court on

19  May 27, 2025, *see Tohono O'odham Nation v. U.S. Dep't of the Interior*, 138 F.4th 1189 (9th

20  Cir. 2025), and issued its mandate on July 21, 2025, *see* Order Setting Status Conf., ECF No.

21  73. Meanwhile, Defendants continued to work on compiling the Administrative Record until

22  this Court entered its order granting the initial stay on October 3, 2025, *see* ECF No. 89 ¶ 7, a

23  mere two weeks before Defendants' deadline to provide the Administrative Record to the

24  Parties in this case (i.e., October 17, 2025), *see* Scheduling Order, ECF No. 83. Therefore,

25  contrary to Defendants' assertions, *see* ECF No. 89 ¶ 7, directing Federal employees to

26  complete an Administrative Record that Defendants have had months to prepare—and that

27  should have been nearly complete at the time the government shutdown on October 1, 2025—

28                                                  4

1    does not constitute an inordinate burden.

2           Applying the proper test, it is clear that the three factors weigh against granting

3    Defendants' requested relief. *See Chinaryan*, 122 F.4th at 825. Protected historic properties

4    and cultural resources that are the subject of this litigation will suffer from ongoing damage as

5    a "result from the granting of a stay," and as a result, "Plaintiffs . . . will continue to be,

6    harmed by a stay while Defendants continue to engage in the underlying harmful activities at

7    issue in this litigation." *Id.* Indeed, since the Court's October 3, 2025 Order granting a partial

8    stay, *see* ECF No. 88, the balance of harms has increasingly shifted against any further stay in

9    this case. Construction activities on the SunZia Project, including in the San Pedro Valley,

10   have continued during the pendency of the stay, causing Plaintiffs ongoing and irreversible

11   harm. Additionally, Rio/Sol is in the final stages of planning and permitting for the

12   construction of the second transmission line along Defendant-Intervenor's right-of-way,

13   including by engaging with the Arizona Corporation Commission regarding the necessary

14   local approvals. *See, e.g.*, Welch Decl. ¶ 9; Ex. 1; Ex. 2. This second line will effectively

15   *double* the number of transmission towers, wires, and ground surface and visual impacts in

16   the San Pedro Valley, exponentially increasing the harm to Plaintiffs' substantial and

17   carefully delineated, concrete interests in the historic properties and cultural resources therein.

18   *See* Welch Decl. ¶ 8. This destruction of precious, irreplaceable cultural and archaeological

19   resources is precisely the harm Plaintiffs are seeking to address through this litigation and

20   underscores the need to promptly resolve the issues before the harm becomes further

21   entrenched. *See Nevada v. United States*, No. 3:18-cv-569-MMD-CBC, 2019 WL 11029477,

22   at *1 (D. Nev. Jan. 2, 2019) (denying motion to stay due to lack of appropriations "in light of

23   the alleged irreparable harm and the government's refusal to assure that it will not proceed

24   with the asserted harmful conduct" (shipment of plutonium) before resolution of motion for

25   preliminary injunction).

26           Finally, allowing this litigation to proceed would promote judicial economy. *See*

27   *Chinaryan*, 122 F.4th at 825. Over a month has passed since Defendants moved for a stay in

28

5

this case, ECF No. 89, and Defendants once again seek an indefinite stay, one that can last

for an unknown length of time—the pendency of the government shutdown, *id.* ¶ 6.[1]

Extending a stay of this litigation for a currently unknown period would further prejudice

Plaintiffs and undermine the judicial economy benefits of the expedited briefing sought in

this case. *See Native Songbird Care & Conservation v. Foxx*, No. 13–cv–02265-JST, 2013

WL 5609320, at *3 n.3 (N.D. Cal. Oct. 11, 2013) ("Given the fact that time is of the essence

in this case, and the fact that an indefinite stay could potentially prejudice Plaintiffs, the

Court will not stay this case because of the lapse of appropriations."). Accordingly,

Plaintiffs respectfully request that this Court deny Defendants' Motion to Continue the Stay.

　　　　In the alternative, Plaintiffs respectfully requests that the Court at least order

Defendants to produce the Administrative Record. As explained, producing the

Administrative Record would not place an undue burden on Defendants, *see supra* at 4, and

would promote judicial economy by allowing the Parties to commence their review of the

record during the ongoing government shutdown, allowing the Parties to move quickly into

resolving any record issues and merits briefing once appropriations are restored. Therefore,

Plaintiffs respectfully request that the Court at least order Defendants to complete the

Administrative Record within two weeks of its order on Defendants' Motion to Stay, ECF No.

89—i.e., within a time commensurate with the length of time the shutdown impacted

Defendants' efforts to compile the record (from October 3 to October 17, 2025).[2]

---

[1] Indeed, many mainstream outlets are reporting that there is no end in sight to the lapse in appropriations. *See, e.g.*, Juliana Kim, *How would the government shutdown affect Thanksgiving travel? Here's what to know*, NPR (Nov. 6, 2025), https://www.npr.org/2025/11/06/nx-s1-5599582/government-shutdown-airport-thanksgiving-travel; Catie Edmondson & Megan Mineiro, *Democrats Dig In on Shutdown After Election Wins*, NY TIMES (Nov. 5, 2025), https://www.nytimes.com/2025/11/05/us/politics/democrats-trump-shutdown-filibuster.html.

[2] Defendants also suggest this relief in the alternative. *See* ECF No. 89 ¶ 7. However, Defendants request "an extension of time that commensurate with the length of the shutdown—or approximately 33 days— from the current deadline of November 17, 2025

1

2    Dated: November 7, 2025                    Respectfully submitted,

3                                               */s/Elizabeth L. Lewis*
4                                               Elizabeth L. Lewis

5                                               Elizabeth L. Lewis
6                                               DC Bar No. 229702
                                                lizzie@eubankslegal.com
7                                               William S. Eubanks II
                                                DC Bar No. 987036
8                                               bill@eubankslegal.com

9
                                                EUBANKS & ASSOCIATES, PLLC
10                                              1629 K Street NW, Suite 300
                                                Washington, DC 20006
11                                              (970) 703-6060

12
                                                *Attorneys for Plaintiffs Center*
13                                                 *for Biological Diversity and*
                                                   *Archaeology*
14                                                 *Southwest*

15
                                                Howard Shanker, Attorney General
16                                              AZ Bar No. 015547
17                                              Howard.Shanker@tonation-nsn.gov
                                                Rebecca Cohen
18                                              AZ Bar No. 039139
19                                              Rebecca.Cohen@tonation-nsn.gov

20                                              TOHONO O'ODHAM NATION
                                                OFFICE OF ATTORNEY GENERAL
21                                              P.O. Box 830
22                                              Sells, Arizona 85634

23    _____

24    (to and including December 22, 2025)." ECF No. 89 ¶ 7. Defendants misstate the applicable
      deadline. As stated above, this Court ordered Defendants to provide the Administrative
25    Record to the Parties by October 17, 2025. *See* Scheduling Order, ECF No. 83. November
      17, 2025 was the date by which the Parties had to notify Defendants of "any issues
26    regarding the completeness of the record and/or any issues regarding the admission of extra-
      record evidence." *Id.* Plaintiffs believe that the two-week deadline is more appropriate
27    under these circumstances.

28
                                                7

(520) 383-3410

*Attorneys for the Tohono O'odham Nation*

Alexander B. Ritchie, Attorney General
AZ Bar No. 019579
alex.ritchie@scat-nsn.gov
Justine Jimmie
AZ Bar No. 019148
justine.jimmie@scat-nsn.gov
Jana Sutton
AZ Bar No. 032040
jana.sutton@scat-nsn.gov
Bernardo M. Velasco
AZ Bar No. 033746
bern.velasco@scat-nsn.gov

SAN CARLOS APACHE TRIBE
DEPARTMENT OF JUSTICE
P.O. Box 40
San Carlos, Arizona. 85550
alex.ritchie@scat-nsn.gov
(928) 475-3344

*Attorneys for the San Carlos Apache Tribe*